**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| FCA US LLC, | Case No.: 3:24-cv-01728 |
| Plaintiff, | |
| vs. | |
| The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), UAW Local 12, UAW Local 1435, and UAW Local 573, | |
| Defendants. | |

## <u>COMPLAINT</u>

Plaintiff FCA US LLC ("Stellantis" or "Plaintiff"), by its counsel, Morgan, Lewis & Bockius, LLP, brings this Complaint to prevent and/or remedy a breach of contract by Defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), UAW Local 12, UAW Local 1435, and UAW Local 573 ("Defendants") by means of impermissible mid-contract strikes. During the 2023 collective bargaining negotiations, Stellantis and the UAW agreed to new language reflecting *planned* future investments in U.S. operations. This language, which is set forth in Letter 311 of the collective bargaining agreement ("CBA") states, in relevant part, that Stellantis *plans to* make future investments in numerous plants throughout the life of the 2023 CBA, which expires in 2028, including investments in the idled plant in Belvidere, Illinois starting in 2024 and in the Detroit Assembly Complex in 2026.

Letter 311 also explicitly states that the planned future investments set forth in the letter "are subject to approval by the Stellantis product Allocation Committee and contingent upon plant

performance, changes in market conditions, and consumer demand continuing to generate sustainable and profitable volumes. . . ." In other words, the planned future investments in the letter are conditional, require Company approval, and are subject to change based on these business factor contingencies.

Ignoring this negotiated-for and mutually agreed-upon language in Letter 311, the UAW and its agents, including President Shawn Fain, have embarked on a sustained, multi-month campaign against the Company to force the planned investments without Company approval and regardless of business factors.  Fain baselessly alleged Stellantis engaged in "serious violations" of the CBA and recommended to the UAW membership that they authorize a strike. The UAW and its agents also have filed sham grievances designed to justify mid-contract strikes against Stellantis that otherwise would violate the CBA's no strike clause.  Based on Defendants' misconduct and ongoing strike threats, Stellantis respectfully and urgently seeks the Court's intervention to declare that Defendants cannot ignore the plain language in Letter 311, Defendants' sham grievances do not authorize Defendants to engage in mid-contract strikes, and Defendants have acted in bad faith and thus violated the implied covenant of good faith and fair dealing incorporated into the CBA under Section 301 of the Labor Management Relations Act.  And to the extent that Defendants carry out any mid-contract strikes that violate these commitments, the Court should award Stellantis monetary damages that result from Defendants' breach.

## I.  <u>SUMMARY OF ACTION</u>

1.  This action is brought pursuant to the Labor Management Relations Act ("LMRA"), Section 301, 29 U.S.C. § 185, against the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), UAW Local 12, UAW

Local 1435, and UAW Local 573 ("Defendants"). By this action, Plaintiff: (i) seeks a declaration that the UAW may not strike based on bad faith, sham grievances demanding investments set forth in Letter 311 of the CBA be implemented immediately because such investments are expressly subject to approval by Stellantis and contingent upon factors including plant performance, changes in market conditions, and consumer demand; and (ii) seeks monetary damages from Defendants for the substantial economic harm from any impermissible work stoppages that occur in violation of Defendants' contractual and legal commitments.

2.      Plaintiff and Defendants are parties to a 2023 National Production, Maintenance, & Parts Agreement entered into in 2023 and expiring in 2028 ("CBA").

3.      The CBA includes Letter 311, which summarizes Stellantis' "planned future investments" in numerous plants, including the Belvidere Assembly Plant and Detroit Assembly Complex.  Attached hereto as Exhibit A, and incorporated herein by this reference, is Letter 311. But Letter 311 also provides that these planned future investments are "subject to approval by the Stellantis product Allocation Committee and contingent upon plant performance, changes in market conditions, and consumer demand continuing to generate sustainable and profitable volumes for all of the U.S. Manufacturing facilities."  Ex. A.

4.      Defendants, and in particular, UAW President Shawn Fain, seek to unilaterally invalidate Letter 311's business factor contingencies. They ignore Letter 311's plain language—language that the UAW negotiated and agreed to—and insist that the Company immediately move forward with all the planned investments.

5.      Defendants have acted in bad faith by going on a publicity campaign, filing sham grievances ignoring Letter 311's conditions, and now calling a vote to authorize a strike based on these bad faith grievances.

6.      Defendants' actions and demands are clearly contrary to the parties' CBA. The Court should issue a declaratory judgment that Defendants cannot ignore the plain language in Letter 311, and that Defendants' sham grievances do not authorize Defendants to engage in mid-contract strikes. And Defendants' attempts to undermine and frustrate Letter 311's negotiated and agreed-upon conditional language also constitute a breach of the implied covenant of good faith and fair dealing under the CBA.

## II.     **THE PARTIES**

7.      Plaintiff is a limited liability company headquartered in Auburn Hills, Michigan and incorporated in the State of Delaware.  Plaintiff is engaged in the manufacture and sale of automotive products in interstate commerce and is an employer in an industry affecting commerce, within the meaning of § 301 of the LMRA, and the definitions contained in §§ 2(2) and 501(1) and (3) of the LMRA, 29 U.S.C. § 152(2) and 29 U.S.C. § 142(1), (3).

8.      Defendant UAW is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(5), 185, and is the bargaining representative for Plaintiff's employees.

9.      Defendant UAW Local 12 is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(5), 185. The UAW and UAW Local 12 are the duly certified, exclusive bargaining representative for certain of Plaintiff's employees at the Toledo Assembly Complex and, as such, are both labor organizations

representing employees in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

10.     Defendant UAW Local 1435 is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(5), 185. The UAW and UAW Local 1435 are the duly certified, exclusive bargaining representative for certain of Plaintiff's employees at the Toledo Machining Plant and, as such, are both labor organizations representing employees in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

11.     Defendant UAW Local 573 is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(5), 185. The UAW and UAW Local 573 are the duly certified, exclusive bargaining representative for certain of Plaintiff's employees at the Mopar Cleveland Parts Distribution Center ("Cleveland PDC") and, as such, are both labor organizations representing employees in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

### III.     <u>JURISDICTION AND VENUE</u>

12.     This is an action between an employer and labor organizations representing employees in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

13.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and because Defendants are labor organizations under Section 301 of the LMRA, 29 U.S.C. § 185.

## IV.    COLLECTIVE BARGAINING AGREEMENT AND LETTER 311

14.    Letter 311, which is part of the CBA, sets forth Stellantis' planned future investments of approximately $18.9 billion in a number of plants throughout the life of the 2023 CBA, which expires in 2028.

15.    Stellantis has finalized its plans for certain investments referenced in Letter 311 and, to date, has announced $6.2 billion in investments in Kokomo and recently announced $400 million in Michigan investments.

16.    Among other items, Letter 311 lists the following planned future investments in the Belvidere Assembly Plant: (1) launch a consolidated Mopar Mega Hub in 2024; (2) launch stamping operations in 2025; and (3) allocate a new midsize truck in 2027.

17.    Letter 311 also indicates a planned future investment for the next generation Durango (D6U) in 2026 for the Detroit Assembly Complex.

18.    Letter 311 also expressly provides that, due to the "unpredictability" of "highly volatile" vehicle markets, all of these planned future investments are subject to committee approval, and contingent upon plant performance, market conditions and consumer demands. Specifically, Letter 311 provides:

> The parties understand and agree that the global and North American economies and vehicle markets remain highly volatile and, as such, continue to be unpredictable. Further unpredictability with volumes and mix is anticipated with the introduction of E,V. product offerings within our vehicle lineup.  Accordingly, it is understood that the product investment and employment level numbers set forth [in Letter 311] are subject to approval by the Stellantis product Allocation

Committee and contingent upon plant performance, changes in market conditions, and consumer demand continuing to generate sustainable and profitable volumes for all of the U.S. manufacturing facilities described [in Letter 311].

19.     Letter 311 further explains that "Stellantis is committed to establish long-term stability and job security for the U.S. workforce" and that, in turn, the Union " understands that product allocation is achieved through strong and sustained plant performance and is committed to enable Company success and thereby help create stability and security for employees."  Ex. A.

20.     Section 5 of the CBA states that "[t]he Union will not cause or permit its members to cause nor will any member of the Union take part in any strike or stoppage of any of the Company's operations or picket any of the Company's plants or premises until all the grievance procedure as outlined in this Agreement has been exhausted, and in no case over a matter on which the Appeal Board has power, and authority to rule. . . ."

21.     Section 29 of the CBA exempts disputes regarding Letter 311 from the Appeal Board's (arbitration) jurisdiction and processes.

22.     Based on Section 5 and 29, absent a *bona fide* and good faith dispute over Letter 311 compliance, Defendants cannot rely on Letter 311 as a basis to engage in mid-contract strikes against the Company to force investments that effectively void negotiated-for and mutually agreed-upon language in Letter 311.

## V.     THE UAW PUBLICLY MISREPRESENTS LETTER 311'S TERMS

23.     The UAW has conducted a sustained campaign attempting to thwart the provisions of Letter 311 and force Stellantis to implement the Letter's planned future investments irrespective of Company approval and business factors such as market conditions or consumer demand.

24.     As far back as November 2023, the UAW published a message to its members describing the planned future investments in the Belvidere Assembly Plant as unconditional commitments by Stellantis, but without informing membership that they were subject to approval by Stellantis and contingent upon business factors such as market conditions and consumer demand.  In August 2024, the UAW launched a national publicity campaign misrepresenting that the planned future investments in Letter 311 were absolute commitments and ignoring the business factor contingencies in Letter 311.

25.     More recently, UAW President Shawn Fain has repeatedly misrepresented Letter 311 as a "guarantee" of immediate investments in Belvidere. By doing so, Fain has intentionally misled UAW members and the public by failing to acknowledge the plain language of Letter 311—language the UAW negotiated and agreed to—providing that the planned future investments are subject to approval by Stellantis and contingent on business factors including market conditions and consumer demand. The following are examples of the UAW and Fain's misrepresentations:

•       In August 2024, the UAW created a website "Stellantis: Keep the Promise" dedicated to Letter 311 grievances.[1] In a "Letter to the Membership" published on the website Fain mischaracterized the Belvidere investment timeline  as "commitments" Stellantis allegedly failed to honor.

•       On August 19, 2024, during a speech at the Democratic National Convention, Fain claimed that Stellantis promised to reopen a plant and is trying to back out of that promise without

---

[1] *See* https://stellantis.uaw.org/?source=2023button

reference to Letter 311's conditions.[2] That same day, the UAW issued a statement announcing its intention to file grievances over Letter 311, again, without reference to the contractual market conditions contingencies in Letter 311.[3]

- On August 20, 2024, Fain was quoted in a Bloomberg Law article claiming Stellantis "promise[d]" to reopen Belvidere without referencing the Letter's conditions.[4]

- On September 15, 2024, Fain wrote an Op-Ed in the Detroit News, referring to the Belvidere allocations as "commitments" and "promises" without referencing Letter 311's contractual conditions.[5]

- On September 17, 2024, Fain hosted a Facebook Live speech and misrepresented Letter 311, misinformed his members and the public, and attacked the Company and its leadership stating, among other things, "Those investment *commitments* weren't just words on paper." … "In our 2023 negotiations, we *secured* $19 billion in product & investment commitments from Stellantis" … "So we're damn sure not going to turn around and just let Stellantis *violate* our agreement and destroy thousands of good blue-collar jobs in America." … "Right now, the

---

[2] *See* https://www.youtube.com/watch?v=pZ9WinNzBK8 (5:45 – 7:00).

[3] *See* https://uaw.org/uaw-stellantis-locals-prepare-grievances-over-companys-failure-to-keep-product-commitments-paving-way-for-strike-action-if-necessary/

[4] *See* Bloomberg, *UAW Threatens Stellantis Strike Ahead of Boss's Attach,* available at https://www.bloomberg.com/news/articles/2024-08-20/uaw-president-fain-calls-out-stellantis-at-democratic-convention

[5] *See* Detroit News, *Stellantis must keep its promises to autoworkers*, available at https://www.detroitnews.com/story/opinion/columnists/labor-voices/2024/09/15/labor-voices-stellantis-must-keep-its-promises-to-autoworkers/75203125007/#:~:text=Last%20month%2C%20the%20UAW%20launched,to%20strike%20over%20those%20commitments

company is planning to *violate* this agreement." … "But pushing the product outside the date of the agreement means we have no agreement." … "We will also be holding strike authorization votes at one or more Stellantis locals."

- On September 27, 2024, Fain wrote a letter to the UAW Stellantis Council falsely alleging Stellantis engaged in "serious violations of our contract and patterns of illegal behavior" and that Fain had recommended "to the membership that every UAW worker at Stellantis prepare for a fight, and we all get ready to vote YES to authorize a strike at Stellantis."

## VI.   THE UAW FILES MULTIPLE SHAM GRIEVANCES AGAINST STELLANTIS

26.    The UAW and its local chapters recently filed a bevy of sham grievances regarding Letter 311's planned investments. All of the grievances disregard—and indeed, do not even mention—the express business factor contingencies that must be taken into account for the planned investments under the Letter.

27.    Upon information and belief, these grievances were coordinated by the UAW to each of the local unions, including UAW Locals 12, 1435, and 573.

28.    Numerous UAW local unions filed virtually identical grievances claiming that Stellantis is violating Letter 311 and demanding that the Belvidere investments proceed without approval by the Company and on a timeline that does not take into account the business factor contingencies.

29.    Defendants filed multiple grievances, including a grievance filed by UAW Local 12 for Toledo Assembly Complex, UAW Local 1435 for the Toledo Machining Plant, and UAW Local 573 for Cleveland PDC, on August 19 and September 16, 2024 alleging that the Company's

alleged "failure to plan for, fund, and launch these programs" including the planned investments at Belvidere constitute a violation of [Letter 311] and demanding that the "Company rescind its decision to push back the above-referenced launches and immediately plan for and fund the Belvidere investments in order to comply with the agreed upon timeline for launching" the planned investments in Belvidere, without referencing the business factor contingencies.

30.     Local 1435, Local 573, and several other UAW local unions also filed virtually identical grievances claiming that Stellantis is violating the CBA by not yet implementing planned future investment for the next generation Durango (D6U) in 2026 for the Detroit Assembly Complex—again, without mention of the contractually-mandated business factor contingencies.

## VII.     THE UAW CALLS FOR A STRIKE BASED ON THE SHAM GRIEVANCES

31.     Just as Fain threatened during his Facebook live speech, the UAW is now urging its members to strike. In a recent letter, Fain and the UAW "unanimously recommend[ed] to the membership that every UAW worker at Stellantis prepare for a fight, and we all get ready to vote yes to authorize a strike."[6]

32.     As mentioned, Section 5 of the CBA prohibits mid-contract strikes except in exceptional circumstances and not until all grievance procedures have been exhausted. The UAW's sham grievances are in bad faith and a pretext for an impermissible strike.

33.     In response to the UAW's bad faith publicity campaign and threats, on or about September 23, 2024 Stellantis informed Fain and the UAW that—under the plain language of

---

[6] See DETROIT FREE PRESS, September 27, 2024, *Fain letter urges UAW Stellantis members to be ready to OK strike,* available at https://www.freep.com/story/money/cars/chrysler/2024/09/27/uaws-fain-letter-stellantis-strike/75420597007/

Letter 311's conditions—there was no legitimate dispute over Letter 311 compliance. Letter 311's planned investments and employment levels are "subject to" committee approval and "contingent upon" factors such as plant performance, market conditions, and consumer demand. Letter 311's conditions, as agreed upon by the UAW and Stellantis, reflect the reality that if the demand for Stellantis' vehicles changes, then Stellantis' planned investments could be subject to change. This language is plainly written in Letter 311 and cannot be a matter of legitimate dispute.

34.     But Defendants have nonetheless marched forward with their scheme to pressure Stellantis to set aside Letter 311's business factor contingencies and unilaterally convert the planned investments to unconditional, fixed investments. Upon information and belief, the UAW has directed its local unions to call strike authorization votes linked to the sham grievances, and at least two local unions already held strike authorization votes.

35.     By making these material misrepresentations to the public and UAW members that ignore the language of Letter 311, by filing sham grievances that ignore the language of Letter 311, and by now calling a vote to strike over a purported dispute that ignores the language of Letter 311, Defendants have acted in bad faith and with an intent to breach the CBA. Their scheme is intended to deprive Stellantis of its rights pursuant to Section 311's business factor contingencies and frustrate the purpose of the parties' CBA. Substantial investments and business decisions are at issue. The UAW cannot force Stellantis to surrender its rights under the parties' agreement by filing bad faith, sham grievances to setup impermissible mid-contract strikes.

36.     Thus, Stellantis brings this action for a declaratory judgment that Defendants cannot ignore the plain language of Letter 311 and that the pending grievances filed by Defendants

are not a legitimate basis to strike under Section 5 of the CBA. Stellantis also seeks relief based on Defendants' violations of the implied covenant of good faith and fair dealing under the CBA.

## COUNT ONE:

## DECLARATORY JUDGMENT THAT DEFENDANTS CANNOT IGNORE THE LANGUAGE OF LETTER 311 AND DEFENDANTS' SHAM GRIEVANCES DO NOT AUTHORIZE A MID-CONTRACT STRIKE

37.     Plaintiff repeats, realleges, and incorporates by reference paragraphs 1- 33 above.

38.     Letter 311 expressly makes its planned investments and employment levels "subject to" committee approval and "contingent upon" plant performance, market conditions, and consumer demand.

39.     Nonetheless, Defendants have demanded that planned investments in Belvidere, Illinois and the Detroit Assembly Complex are not subject to these conditions and are instead fixed commitments that must be acted upon irrespective of the conditions outlined in Letter 311. Defendants have so argued in public pronouncements, in their CBA grievances, and now in threatening to strike.

40.     Defendants request the Court resolve the controversy by issuing a declaratory judgment that Defendants cannot ignore the plain language in Letter 311 and that the pending grievances do not authorize Defendants to engage in a mid-contract strike.

## COUNT TWO:

## BREACH OF IMPLIED COVENANT OF

## GOOD FAITH AND FAIR DEALING

41.     Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-37 above.

- 13 -

42. The parties entered into a valid contract – the 2023 CBA. Plaintiff has performed under the CBA.

43. The parties' CBA contains an implied covenant of good faith and fair dealing under Section 301 of the Labor Management Relations Act.

44. Defendants have, in bad faith, prevented Plaintiff from exercising its rights and receiving the benefits provided to Stellantis under the CBA. The CBA's Letter 311 contains conditional language providing that planned investments are "subject to approval by the Stellantis product Allocation Committee and contingent upon plant performance, changes in market conditions, and consumer demand continuing to generate sustainable and profitable volumes for all of the U.S. manufacturing facilities described."

45. As explained above, the UAW acted in bad faith by disregarding this language, filing sham grievances, and calling a strike authorization vote to pressure Stellantis to proceed with planned investments irrespective of Letter 311's conditions.

46. Defendants' publicity campaign, bad faith grievances, and intent to strike are aimed to frustrate the purpose of Letter 311 and undermine its conditional language.

WHEREFORE, Plaintiff prays:

1. That the Court declare the pending grievances expressly conflict with Letter 311 and that Defendants cannot ignore the plain language of Letter 311;

2. That the Court declare that any resulting strike by the Defendants based on the pending grievances is a breach of Section 5;

3. That the Court find that the Defendants have violated the implied covenant of good faith and fair dealing based on their actions;

4.      That the Court award Plaintiff damages for the substantial economic harm that would be caused by any work stoppage engaged in by Defendants that breaches Section 5 of the CBA;

5.      That the Court award Plaintiff its reasonable attorneys' fees and costs incurred in bringing this action;

6.      That the Court grant Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  October 4, 2024                          **MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Doriyon C. Glass*
  Doriyon C. Glass (OH Bar No. 98149)
  1111 Pennsylvania Avenue, NW
  Washington, DC  20004
  Telephone:  +1.202.739.3000
  Facsimile:  +1.202.739.3001
  Email: doriyon.glass@morganlewis.com

  W. John Lee (*pro hac vice forthcoming*)
  2222 Market Street
  Philadelphia, PA 19103-3007
  Tel:        +1.215.963.5000
  Fax:        +1.215.963-5001
  w.john.lee@morganlewis.com

  David Broderdorf (*pro hac vice forthcoming*)
  1111 Pennsylvania Avenue, NW
  Washington, DC 20004-2541
  Tel:        +1.202.739.3000
  Fax:        +1.202.739.3001
  david.broderdorf@morganlewis.com

  Attorneys for Plaintiff
  FCA US LLC